**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0843n.06

**No. 11-3980**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 06, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GLORIA OLIVER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ST. LUKE'S DIALYSIS LLC, dba SHAKER | ) | OHIO |
| SQUARE DIALYSIS; ANN VOGT; JANET | ) | |
| HUTCHINS, | ) | |
| | ) | |
| Defendants-Appellees. | | |

Before: SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

**SILER**, Circuit Judge. Plaintiff Gloria Oliver appeals from the district court's grant of summary judgment to Defendants St. Luke's Dialysis, LLC ("St. Luke's"), Ann Vogt, and Janet Hutchins on her Age Discrimination in Employment Act (ADEA) and the Ohio Civil Rights Act (OCRA) claims. For the following reasons, we **AFFIRM** the district court's judgment.

**I.**

Oliver, an African-American female, worked as a patient care technician at St. Luke's Dialysis, LLC. In 2009, a St. Luke's administrator overheard Oliver say to a patient, "Are you bleeding all over the floor and not telling me? I should slap you in the head." The administrator informed Hutchins, a supervisor, of Oliver's comment. While Oliver admitted to making the comment, she maintains that she was merely joking with the patient.

---

[*] The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

Later the day of the incident, St. Luke's terminated Oliver for threatening the patient. Oliver then filed an age discrimination charge with the Ohio Civil Rights Commission and a race and gender discrimination charge with the Equal Employment Opportunity Commission. Subsequently, she brought the instant lawsuit *pro se* with claims for race, sex, and age discrimination, as well as a failure-to-train claim.

The district court dismissed Oliver's Title VII gender discrimination claim, her failure-to-train claim, and her ADEA claim against Hutchins and Vogt in their individual capacities. The district court afforded Oliver leave to amend her complaint to state more definitely her OCRA and 42 U.S.C. §1981 gender discrimination claims. Oliver, now represented by counsel, filed the operative amended complaint with claims under the OCRA for race and gender discrimination, and with a claim under the ADEA and OCRA for age discrimination.

The district court granted the defendants' motion for summary judgment, determining that Oliver had not sufficiently established evidence for a *prima facie* case of discrimination. The court additionally held that even if Oliver had provided proof of a *prima facie* case, she provided insufficient evidence to create a genuine dispute of material fact that St. Luke's stated reason for her termination was pretextual. On this alternative ground, the district court would also have granted summary judgment to the defendants.

## II.

We review *de novo* a district court's grant of summary judgment. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Oliver offers no direct evidence of discrimination, so we evaluate her claims under the burden-shifting evidentiary framework from *McDonnell Douglas Corp. v. Green,*

411 U.S. 792, 802-803 (1973); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (ADEA and OCRA claims).

Initially, Oliver must establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. Once she has made such a showing, the burden then shifts to St. Luke's to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 802-03. Finally, if St. Luke's meets its burden, Oliver must prove that the proffered reason was merely pretext for underlying discrimination. *Id.* at 804-05.

## III.

The district court correctly determined that Oliver failed to establish a *prima facie* case of age, race, or gender discrimination. To establish such a case, a plaintiff bears the burden of demonstrating that (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) either a person outside the protected class replaced her or she received different treatment than a similarly situated non-protected employee. *Chattman v. Toho Tenax Am., Inc., _* F.3d _ , 2012 WL 2866296, at *5 (6th Cir. July 13, 2012); *Geiger v. Tower Auto.,* 579 F.3d 614, 622-23 (6th Cir. 2009).

Oliver established the first three prongs. First, she is an African-American woman older than 40, making her a member of a protected class for race, gender, and age. *See Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008) (race); *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 432 (6th Cir. 2004) (gender); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (age). Second, she worked consistently for St. Luke's for several years and "received two 'Service Excellence' pins, two gift cards, and a thank you card . . . for outstanding performance and coming

in to work or assist staff on [her] day off," demonstrating she was qualified for the job she held. *See*

*Warfield v. Lebanon Corr. Inst.,* 181 F.3d 723, 729 (6th Cir. 1999) (To establish that she was

qualified for a position already held, a plaintiff must "demonstrate that she was meeting her

employer's legitimate expectations and was performing to her employer's satisfaction."). Third, she

was terminated from her position, and termination constitutes an adverse employment decision. *See*

*Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 594 (6th Cir. 2007).

Oliver fails to demonstrate the fourth prong, however, resulting in the failure of her *prima*

*facie* case. In order to show disparate treatment based on age, race, or gender, Oliver must show that

St. Luke's treated her differently than individuals outside the protected class who are similarly

situated in all "relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352

(6th Cir. 1998). As to age discrimination, Oliver may show instead that her employer replaced her

with someone outside the protected class. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d

405, 410 (6th Cir. 2008).

Oliver failed to identify any similarly situated employee outside her protected class. She

attempts to compare her position to Erica Moorer and Timothy Rhein – two Caucasian employees,

one man and one woman, both more than twenty years younger. Oliver's evidence shows that

Moorer used profanity in front of patients, worked with a hangover most of the time, failed to show

up at least five times, and refused to care for patients, but Moorer's employment continues. Oliver

also vaguely identifies an instance in which Moorer discussed hypothetical physical violence toward

a previous patient. According to Oliver, Rhein also used profanity in front of patients and failed to

show up for work. Without providing any details, Oliver avers that Rhein also "threatened and

abused patients on several occasions" for which "he was rewarded." During her deposition, Oliver recalled that on one occasion Rhein forcibly pushed a patient into a chair and told him he would "kick [his] ass." However, Oliver could not say whether a supervisor ever learned about this incident.

Even affording all reasonable inferences to Oliver, Moorer does not qualify as similarly situated because her discussion of a potential threat occurred in a materially different context. Moorer's incident of threatened physical violence can be distinguished from Oliver's by temporal and physical proximity; when Moorer was heard "going off on how she would have did this to this patient," she was speaking in the lunchroom, away from the patient to whom she referred, a day after having any contact with the patient. Her threat appears to have been indirect and hypothetical discussion at most, because the occasion and opportunity to carry it out had passed before it was uttered. Oliver's statement, however, was made in the presence of and directly to the patient; as in *Smith v. Leggett Wire Co.,* 220 F.3d 752, 763 (6th Cir. 2000), we find that this difference is sufficient to distinguish the severity of the threats. Likewise, Rhein does not qualify as similarly situated because no evidence suggests his supervisor ever knew about the threat. *See Laney v. Ohio Dep't of Youth Servs.,* 448 F. App'x 553, 556 (6th Cir. 2011); *Neview v. D.O.C. Optics Corp.,* 382 F. App'x 451, 458 n.9 (6th Cir. 2010).

Oliver also fails to establish the fourth prong of her age discrimination claim: that she was replaced by someone younger. Although she strives to show that Lynette Fellows, a woman twenty years younger, was her replacement at St. Luke's, Oliver fails to offer sufficient proof to meet her burden. *See Spees v. James Marine, Inc.,* 617 F.3d 380, 389 (6th Cir. 2010) ("plaintiff has the burden

of proving by the preponderance of the evidence a prima facie case of discrimination" (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981))).

Neither Selena Moseley's affidavit nor Oliver's affidavit and deposition – together the evidence that she argues the district court neglected or ignored – establish a *prima facie* case. Even though the district court failed to reference the deposition or affidavits in its opinion and order, reversal is not warranted. None of these filings establish Moorer or Rhein as similarly situated, nor do they document Fellows to be Oliver's replacement.

## IV.

Even assuming *arguendo* that Oliver successfully established a *prima facie* case of discrimination, she has not advanced sufficient evidence of pretext under the *McDonnell Douglas* framework to forestall summary judgment. Oliver's minimal attempts to demonstrate pretext fall well short of the mark. First, she argues that the decision to terminate her was pretextual because no investigative procedures were undertaken to determine the credibility of the charges of her alleged threat. However, no investigative procedures were warranted, as Oliver admitted to making the remark. She also contends that complaints about her "work performance was [sic] a pretext to hide the real motive" behind her termination. However, Oliver immediately thereafter suggests that Hutchins actually sought to "get rid of a financial burden" and "cut costs," contentions that conflict with her protected class discrimination claims. Thus, Oliver has failed to articulate sufficient evidence of pretext as to reasons for her termination.

**AFFIRMED**.